PRUDENTIAL INSURANCE COMPANY OF AMERICA, DONALD J. TILBERG AND MARION SMITH, APPELLANTS, v. VALERIE LAMME, INDIVIDUALLY, AND AS NATURAL GUARDIAN OF RODNEY LAMME, A MINOR, AND DEBRA LAMME, A MINOR, RESPONDENT.

No. 5185

March 31, 1967                    425 P.2d 346

*Hawkins and Cannon,* of Las Vegas, for Appellants.

*Foley Brothers,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

The main issue on this appeal is the legal effect of a life insurance conditional receipt issued by the Prudential Insurance Company to Richard Lamme a few weeks before he died. His widow, Valerie Lamme, brought suit against Prudential to recover $25,000 as the beneficiary of a mortgage protection life insurance policy.[1] The insurance policy was never issued. Prudential, however, had received Richard's application on a form labelled Part I, the non-medical portion, had accepted the first quarterly premium payment of $52.64, and, in return, had given Richard a conditional receipt. Part II of the application, the medical information form to be supplied by the examining physician, was never completed since Richard did not appear for a physical examination. He died from a heart attack about 7 weeks after applying for insurance. A jury favored Valerie with its verdict, and this appeal by Prudential followed. We must decide whether the conditional receipt afforded Richard interim coverage. It is our opinion that it did. Accordingly, we affirm the judgment.

The use of the conditional receipt has fostered extensive litigation and is a popular subject for law review comment.[2] There are two types of conditional receipts in common usage —the "approval type" which usually recites that coverage shall be in force from a specified date provided the application is

---

[1] The basic policy was to be for $5000 with additional, but diminishing term insurance, initially in the amount of $20,000.

[2] Cases collected annot. 2 A.L.R.2d 943; 7 Stanford L.Rev. 292 (1955); 63 Yale L.J. 523 (1954); 15 U.Chi.L.Rev. 379 (1948); 60 Harv.L.Rev. 1164 (1947); 44 Yale L.J. 1223 (1935). See also the lucid article of Samuel Fortunato, "Conditional Receipts: Should the Uninsurable Have Insurance?", Vol. 1, No. 3, The Forum (1966).

approved as applied for at the home office of the insurance company; and, the "insurability type" receipt which provides that insurance coverage shall be effective as of a specified date provided the company is satisfied that on such date the applicant was an insurable risk under the company's underwriting rules for the policy applied for. The receipt here involved is of the latter type, since the basic proviso is that after Part I and Part II of the application are completed, Prudential shall determine "to its satisfaction that the proposed insured was insurable."[3]

When presented with this type of conditional receipt, most courts have found the insurance company liable to the beneficiary, even though the application had not been accepted prior to the death of the applicant, if the applicant was found to have been an insurable risk at the time of the medical examination. Ransom v. The Penn Mutual Life Ins. Co., 274 P.2d 633 (Cal. 1954); Gaunt v. John Hancock Mutual Life Ins. Co., 160 F.2d 599 (2 Cir. 1947); United Founders Life Ins. Co. v. Carey, 363 S.W.2d 236 (Tex. 1962); Life Ins. Co. of North America v. De Chiaro, 172 A.2d 30 (N.J. 1961); Reynolds v. Northwestern Mutual Life Ins. Co., 176 N.W. 207 (Iowa 1920); Albers v. Security Mutual Life Ins. Co., 170 N.W. 159 (S.D. 1918). Of course, the cited cases do not quite reach the issue presented to us since, here, a physical examination of the applicant was not made. It is the position of Prudential that this distinction is crucial; that the medical examination required by Part II of the application for insurance is a condition precedent to liability; that insurability cannot fairly be determined without such examination. The cases of Paulk v. State Mutual Life Ins. Co., 69 S.E.2d 777 (Ga. 1952); Mofrad v. New York Life Ins. Co., 206 F.2d 491 (10 Cir. 1953); Silva v. Sentinel Life Ins. Co., 361 S.W.2d 731 (Tex. 1962), and perhaps others, support this view.

The position of Prudential has appeal as a matter of strict contract law. Yet, an insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared, and

---

[3]The receipt in pertinent part reads: "If the required and completed Part 1 and the required and completed Part 2 of the application and such other information as may be required by the Company are received by the Company at one of its Home Offices, and if the Company after the receipt thereof determines to its satisfaction that the proposed insured was insurable on the later of the dates of said Parts 1 and 2 * * *."

seldom understood by the assured. The same is equally true of the conditional receipt. The parties are not similarly situated. The company and its representatives are expert in the field; the applicant is not. A court should not be unaware of this reality and subordinate its significance to strict legal doctrine. Allen v. Metropolitan Life Ins. Co., 208 A.2d 638 (N.J. 1965). Nor should a court be obliged to overlook the obvious advantage to the company in obtaining payment of the premium when the application is made. It is a device to avoid the possibility that the applicant will change his mind and revoke his application, or deal with a rival company. Metropolitan Life Ins. Co. v. Grant, 268 F.2d 307 (9 Cir. 1959), Pope, J., concurring. A conditional receipt tends to encourage deception. We do not mean to imply affirmative misconduct by the soliciting insurance agent. We suggest only that if nothing is said about the complicated and legalistic phrasing of the receipt, and the agent accepts an application for insurance together with the first premium payment, the applicant has reason to believe that he is insured. Otherwise, he is deceived.

For these reasons we hold that the conditional receipt created a temporary contract of insurance subject to a condition-rejection of Richard Lamme's application by the insurance company. Since rejection did not occur prior to his death, the company is liable. Patterson, Essentials of Insurance Law, 2d ed., p. 100 (1957); Allen v. Metropolitan Life Ins. Co., supra; Ransom v. The Penn Mutual Life Ins. Co., supra.

In Ransom, supra, the court construed the "insurability" condition of the receipt as a condition subsequent; that is, a condition which if not met would terminate coverage, rather than a condition precedent; that is, a condition which, if met, would initiate coverage. Such construction may, on occasion, allow one who is not insurable for physical reasons, to secure insurance coverage, since the applicant's insurability at the moment his application is received and premium paid is irrelevant. Metropolitan Life Ins. Co. v. Wood, 302 F.2d 802 (9 Cir. 1962). Indeed, this is the main criticism directed to the Allen and Ransom decisions. See: 7 Stanford L.Rev. 292 (1955); Fortunato, Conditional Receipts: Should the Uninsurable Have Insurance, Vol. 1, No. 3, The Forum (1966).

Notwithstanding this possible result in some instances, we think that the policy considerations heretofore expressed carry the greater weight. The life insurance companies may still

write "COD" insurance,[4] or, in the light of experience, choose to assume the risk sometimes involved in the use of the conditional receipt. Our holding renders it unnecessary to consider other assigned errors.
Affirmed.

COLLINS and ZENOFF, JJ., concur.

---

[4]Absent a contrary agreement (the conditional receipt, for example) payment of the initial premium and delivery of the policy are usually concurrent acts, thereby creating a period between the signing of the application by the applicant and the delivery of the policy during which no money has been advanced to the insurance company, and no insurance is in effect. This is called "COD", or "cash on delivery" insurance.