ALLSTATE INSURANCE COMPANY, AN ILLINOIS CORPORATION, APPELLANT, v. STANLEY J. PIETROSH AND LILLIAN PIETROSH, INDIVIDUALLY AND AS NATURAL GUARDIANS OF JOHN STANLEY PIETROSH, A MINOR, AND JOHN STANLEY PIETROSH, A MINOR, RESPONDENTS.

No. 5737

May 6, 1969 — 454 P.2d 106

*Wait & Shamberger,* of Reno, for Appellant.

*Echeverria & Osborne,* of Reno, for Respondents.

## O P I N I O N

By the Court, THOMPSON, J.:

This is an action for declaratory relief commenced by All-state Insurance Company requesting an adjudication denying

that company's liability to its insureds for any part of a judgment secured by the insureds against an uninsured motorist. The meaning to be given the uninsured motorist provisions of an automobile insurance policy was the issue presented to the district court and now tendered to us. The district court ruled against Allstate and entered judgment in favor of the insureds for $10,000, interest, costs, and attorney's fees upon a counterclaim therefor. This appeal followed. We affirm.

The insurance policy issued by Allstate to the parents of John Pietrosh, a minor, provided coverage to the extent of $10,000 as damages which the named insureds or any relative residing with them would be entitled to recover from the owner or operator of an uninsured vehicle causing bodily injury. That event occurred on July 19, 1966 when the minor son of the insureds was injured in a collision between the bicycle he was riding and an uninsured automobile driven by Margaret Howard. Allstate was informed of the accident shortly after it happened. One of its agent told the insureds " 'You're fully covered by us' " and that "they would take care of the whole thing . . . ." The policy contained a provision for arbitration upon written demand of either Allstate or the insured should any dispute arise as to liability or the amount of damages. It is disputed which of two endorsements was applicable at the time of the accident. One of them, an exclusion from coverage, required the written consent of Allstate to settlement with or the prosecution to judgment against the uninsured motorist. The other endorsement, placed within the coverage section of the policy, provided that no judgment against the uninsured motorist would be conclusive unless entered in an action prosecuted by the insured with the written consent of Allstate.

The record does not disclose whether the insureds or Allstate attempted to settle the uinsured motorist claim. Neither the insureds nor Allstate demanded arbitration. Four months after the accident the insureds commenced an action for damages against Margaret Howard, the uninsured motorist. On the same date that process was effected upon the defendant, Allstate was orally notified of the litigation, and soon thereafter copies of the pleadings were mailed to Allstate. The defendant answered. Allstate did not seek to intervene. Trial occurred quickly, and on January 20, 1967 judgment was entered for the insured plaintiffs against the uninsured defendant for $21,677.50 and costs. The insureds did not request nor did Allstate give its written consent to the litigation or to the judgment entered therein. The instant action by Allstate for declaratory relief was then instituted.

1. An insured who is legally entitled to recover damages from the owner or operator of an uninsured vehicle would seem to have several options available to secure such relief. He may settle his claim with his insurance company; settle with the uninsured motorist; arbitrate with his insurance company; sue his insurance company; sue the uninsured motorist; or sue both, joining them as codefendants. These options, however, are not always open, and whatever course is selected by the insured may engender problems since other policy provisions and state law sometimes provide barriers. For example, settlement with his insurance company may involve that company's right of subrogation should the insured thereafter proceed against the uninsured motorist. Settlement with the uninsured motorist may require the consent of the insurance company. Arbitration may not be available because of state law. Litigation against the uninsured motorist may be precluded unless consent of the insurance company is obtained. Suit against the uninsured motorist and the insurance company as codefendants may raise problems of joinder and conflicting interests.[1]

This case concerns the interplay of the arbitration and consent provisions of the policy upon the judgment secured against the uninsured motorist, and the right of the insureds to secure partial satisfaction of that judgment from the insurance company.

2. Arbitration. Since the accident giving rise to this dispute occurred in 1966, we are not concerned with the 1967 law which states that "no provision for arbitration . . . is binding upon the named insured or any person claiming under him." NRS 693.115(4). Before 1967 this court did not have occasion to decide the enforceability of an agreement to arbitrate a future uninsured motorist dispute. In a different context, however, we had ruled that an agreement to arbitrate a future dispute was valid and enforceable. United Assn. Journeymen v. Stine, 76 Nev. 189, 351 P.2d 965 (1960). The reasoning of that case applies with equal force to an agreement to arbitrate a future uninsured motorist dispute. Just recently we assumed the enforceability of such a provision in an uninsured motorist policy and held that the arbitration award was

---

[1]The options and attendant problems are discussed by Professor Widiss, Perspectives on Uninsured Motorist Coverage, 62 Nw.U.L.Rev. 497 (1967).

conclusive upon all issues voluntarily submitted to the arbitrator, and which were not subject to vacation or modification for the reasons specified in NRS 38.170 and 38.180. Northwestern Security Ins. Co. v. Clark, 84 Nev. 716, 448 P.2d 39 (1968). That case involved a pre-1967 accident and the effect of the 1967 law was not before us. We now hold that prior to the enactment of NRS 693.115(4) a provision for the arbitration of an uninsured motorist dispute was enforceable.

The policy before us provides for arbitration in the event of disagreement and upon written demand of either insured or insurer. Since neither demanded arbitration the enforceability of that provision is significant only to the extent that it bears upon the "consent" endorsement—a matter to which we now turn our attention.

3. At trial a factual dispute arose as to which of two amendatory "consent" endorsements to the original policy of insurance was applicable at the time of the accident. The district court did not resolve that dispute. Allstate contended that the "permission to sue" clause was in effect. This was an exclusion from coverage provision stating: "This section of the policy does not apply to bodily injury of an insured with respect to which such insured or his representative shall, without the written consent of Allstate, make any settlement with, or prosecute to judgment any action against, any person or organization who may be legally liable therefor . . . ."

The insureds urged that a revised endorsement was in force which provided that "no judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by an insured with the written consent of the company." This endorsement, if applicable, would have appeared in the coverage section of the policy.

The first mentioned endorsement was designed to defeat coverage should the insured prosecute an action to judgment against the uninsured motorist without the consent of Allstate. Under the revised endorsement a prosecution to judgment is not treated as an event that will defeat coverage. Its purpose is to preclude the binding effect of such judgment upon the insurance company.

Since the district court failed to decide which of the two endorsements was in effect, we shall consider each of them.

(a) The permission to sue endorsement. Some courts have

ruled that the permission to sue clause is void, if the arbitration clause is not enforceable. Boughton v. Farmers Ins. Exchange, 354 P.2d 1085 (Okla. 1960); Dominici v. State Farm Mutual Auto Ins. Co., 390 P.2d 806 (Mont. 1964); State v. Craig, 364 S.W.2d 343 (Mo.App. 1963). The reasoning is that if arbitration is not available the insured should be entitled to a court determination of fault and damage in a suit against the uninsured motorist; or that it is against public policy to preclude the insured's right to trial by jury of his claim against the uninsured motorist. These cases are not particularly persuasive since we have decided that a pre-1967 provision for arbitration is enforceable in this state.

The permission to sue endorsement was litigated in two Illinois cases, Levy v. American Auto Ins. Co., 175 N.E.2d 607 (Ill.App. 1961), and Andeen v. Country Mutual Ins. Co., 217 N.E.2d 814 (Ill.App. 1966). The Levy case was decided before Illinois adopted a statute approving agreements to arbitrate future disputes. The Andeen decision was handed down after the enactment of that statute. In each instance the exclusion was held not to bar an action when the insurance company furnished no reason for its refusal to allow the insured to obtain a judgment against the uninsured motorist. In Levy, the court wrote: ". . . the condition of the company's promise to pay is the ascertainment of the legal liability of the third party. The company can prevent this determination by the simple device of refusing to grant the insured its written consent to prosecute the action to judgment. There was an implied promise on the part of the Insurance Company that it would not unreasonably or arbitrarily withhold its written consent. The company gave no reason for its refusal to allow the plaintiffs to obtain a judgment against the uninsured motorist." 175 N.E.2d at 611. And in Andeen, where the insurance company was notified of the filing of suit against the uninsured motorist, and did nothing, the court approved the lower court's remark that the insurance company should have consented to suit or demanded arbitration. Failing to do either, it was bound by the judgment.

Those decisions are on point. Although informed of the accident shortly after it happened, Allstate apparently did nothing. The record does not disclose an attempt to settle the insureds' claim. When notified of the litigation, no move was made to intervene therein (cf. State v. Craig, 364 S.W.2d 343 (Mo.App. 1963)), demand arbitration, or consent to the suit.

This, we think, was unreasonable conduct on its part which we cannot condone.

An insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are expert in the field; the insured is not. Prudential Insurance Co. v. Lamme, 83 Nev. 146, 148, 149, 425 P.2d 346 (1967). For this reason we do not hesitate to place the burden of affirmative action upon the insurance company. When notified of a claim it should investigate with reasonable dispatch; demand arbitration if that is its desire and settlement can't be reached; consent to suit against the uninsured motorist when notified of its pendency; or seek leave to intervene and present its contentions. Multiple litigation is not desirable. In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy. We hold that the permission to sue endorsement, if in effect at the time of the accident, does not bar recovery in the circumstances of this case.

(b) The revised endorsement. The aim of this endorsement is to preclude the binding effect of a judgment against the uninsured motorist upon the insurance company. The notion is that although the insured may litigate against the uninsured motorist without the insurance company's permission, any judgment secured will not obviate the necessity for him to arbitrate with or sue his company in order to collect under the policy. The provision is reasonable when the insurance company is not notified of the litigation and is, therefore, without compulsion to intervene, demand arbitration, or take other steps. Its enforcement may be appropriate in a case where the insured secures a default judgment against the uninsured motorist, since an adversary determination of liability and damages is absent. MFA Mutual Ins. Co. v. Bradshaw, 431 S.W.2d 252 (Ark. 1968). However, where the company is given notice of the action, has the opportunity to intervene, and judgment is thereafter obtained against the uninsured motorist in an adversary proceeding, we hold that the company should be bound thereby despite the contrary policy provision.

We recognize that our holding on this point subverts the requirement of privity normally present with an application

of the doctrines of res judicata or collateral estoppel. Privity is absent here. Our holding also forces intervention. However, the avoidance of multiple litigation carries the greater weight. We therefore conclude that the revised endorsement, if in effect at the time of the accident, does not preclude the judgment entered below.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.