TRAVELERS INSURANCE COMPANY, Appellant,
*v.* RAMIRO LOPEZ, Respondent.

No. 9398

August 17, 1977                    567 P.2d 471

[Rehearing denied September 14, 1977]

*Thorndal & Liles, Ltd.,* and *Leland Eugene Backus,* Las Vegas, for Appellant.

*Patrick J. Fitzgibbons* and *M. Douglas Whitney,* Las Vegas, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from an order granting summary judgment in an action for declaratory relief. Following judgment in the court below, appellant, Travelers Insurance Company, was ordered to pay to respondent, Ramiro Lopez, $10,000 under

the basic reparation benefits clause contained in the policy of insurance issued by Travelers to Lopez.

The facts are undisputed. On July 12, 1974, respondent insured was seriously injured when his automobile collided with that of an uninsured motorist. His personal automobile being operated by him at the time of the accident was insured by both Ambassador Insurance Company and Travelers. Both policies of insurance contained the standard reparation benefits endorsement as mandated by Chapter 698 of the Nevada Revised Statutes. Both basic reparation benefits endorsements contained "other insurance" clauses stating that the maximum amount recoverable by Lopez under both policies is the amount that would have been payable under the provisions of the insurance policy providing the highest dollar limit. In this case, neither insurance carrier provided a higher limit or added reparation benefits, but both companies provided a limit of $10,000. The Ambassador policy was issued on the accident vehicle. The Travelers policy insured three of respondent's vehicles under a commercial policy and also covered "all owned vehicles." The parties have stipulated that the various medical expenses incurred by respondent exceeded $20,000. Ambassador has paid to respondent the $10,000 limit on its policy under the basic reparation benefits provision and is not a party to these proceedings. Travelers has consistently maintained that it has no obligation to pay the insured under the basic reparation benefits endorsement of its comprehensive policy, due to the $10,000 payment by Ambassador.

Appellant has raised the following issues for our determination. (1) Whether the provisions of the Nevada Motor Vehicle Insurance Act, Nevada Revised Statutes Chapter 698, preclude the stacking of two or more obligations to pay basic reparation benefits; and (2) What is the effect to be given the "other insurance" clause contained in Travelers' basic reparation benefits endorsement? We turn to resolve these questions.

1. Resolution of the first issue involves the interpretation of Chapter 698 of the Nevada Revised Statutes known as the Nevada Motor Vehicle Insurance Act, adopted by the Nevada Legislature in 1973 to implement Nevada's no-fault insurance scheme. The Act reveals that the Legislature intended to provide for the payment of certain benefits referred to as basic reparation benefits, excluding harm to property (NRS 698.-040), in an amount not to exceed $10,000 per person per accident for such damages as loss of income, funeral benefits, medical costs and survivor benefits (NRS 698.070). Every

policy of insurance issued in this State, except for those policies which provide coverage only for liability in excess of required minimum tort liability coverages, includes basic reparation benefits coverage (NRS 698.200), and these benefits are payable without regard to fault (NRS 698.250).

Appellant contends that NRS 698.070 read in conjunction with the definition of the basic reparation benefits contained in NRS 698.040 and the provisions of NRS 698.260(4) limit the recovery of basic reparation benefits under all applicable policies of insurance to $10,000.

NRS 698.260 is the section of the Motor Vehicle Insurance Act which provides basic reparation insureds with guidance as to which obligor he must look to for recovery of his first party benefits. Since both Ambassador and Travelers are considered respondent's insurer under our statutory scheme, a question arises as to what the respective obligations of each insurer are when multiple coverages are available. Generally, when there are two or more obligations to pay basic reparation benefits to a person injured while operating or occupying a motor vehicle, the insurers will fall into different categories set forth in NRS 698.260(1), and that subsection specifically designates which insurer must be looked to in order to seek recovery. Subsection (1) indicates that the injured person's claim is to be made to "his insurer", and if he does not have his own insurance "to the insurer of the owner of the motor vehicle", and if neither of the above are insured to "the insurer of the operator of the motor vehicle." It is apparent that conflicts arise under this priority scheme when two or more insurers can be considered as primary obligors under these categories. Appellant posits how this conflict can be resolved, contending that the Nevada Legislature anticipated this dilemma and resolved it by adding subsection (4) to NRS 698.260. NRS 698.260(4) provides:

> If two or more obligations to pay basic reparation benefits are applicable to any injury under the priorities set out in this section, *benefits are payable only once* and the reparation obligor against whom a claim is asserted shall process and pay the claim as if wholly responsible. (Court's emphasis.)

It is Travelers' contention that the "payable only once" language precludes a basic reparation insured from receiving any payments above the $10,000 figure mentioned in NRS 698.-070. Respondent contends that NRS 698.260(4) only precludes double recovery for the same items of damage. We are constrained to agree with respondent.

Appellant admits that both it and Ambassador can be considered to be respondent's insurer, and, therefore, are first in order of priority pursuant to NRS 698.260(1)(a). Subsection (4) of NRS 698.260 refers specifically to our type factual setting arising when "two or more obligations to pay basic reparation benefits are applicable to an injury *under the priorities set out in this section*." (Court's emphasis.) A reasonable interpretation of this language, when read in light of the provisions of subsection (1) of NRS 698.260, is that the Legislature intended to limit the payment of basic reparation benefits to a single level of priority rather than to preclude the "stacking" or "pyramiding" of insurance policies.

Additionally, recognizing that all policies of insurance issued in the State of Nevada must provide for basic reparation benefits (NRS 698.200) and accepting our interpretation of NRS 698.260(4), we perceive NRS 698.460 as supporting the proposition that an insurer must pay basic reparation benefits without regard to payments made from other sources of insurance of the same priority.

Legislative intent supportive of our determination is further reflected in that provision is made to the end that insurers can provide "additional optional coverage for added reparation benefits." NRS 698.360. This section has a chilling effect on Travelers' contention that it was the intent of the Legislature to limit the recovery of basic reparation damages to $10,000 per accident. Although *arguendo*, the additional reparation benefits contemplated by NRS 698.360 are to be provided only upon the payment of higher corresponding premiums, there is nothing preventing the securing of additional reparation benefits through the purchase of a separate policy of insurance providing for the same basic reparation benefits. Nowhere in our legislation is there evidence that the $10,000 minimum basic reparation benefits need be purchased from the same insurer. Had the Legislature intended a different result, it would have so provided.

We conclude by holding that there exists no legislative prohibition against the "stacking" of insurance policies when both insurers are at the same level of priority, as is the case here. There are public policy and other considerations which support this conclusion. For example, the insured Lopez paid premiums on two policies of insurance covering the same vehicle. Both policies of insurance provided for the payment of basic reparation benefits. Injuries and expenses sustained by the insured are in excess of $20,000. Requiring the payment by Travelers of the policy limit would not result in a windfall to

Lopez, nor would it result in any prejudice to the insurance company, in that the insurance company has accepted the payment of premiums and has, in effect, assumed the risk that injury to the insured may occur. The premiums collected by Travelers are deemed to have comprehended this potential.

2. We now turn to the second question, specifically, the effect to be given the "other insurance" clause of the Travelers insurance policy.

The Travelers' Basic Reparation Benefits Endorsement—Nevada, Symbol FF–388, part I, § E(6), p. 5, provides:

> Non-duplication of Benefits—Other Insurance—No eligible insured person shall recover *duplicate benefits for the same elements of loss* under this or any similar automobile insurance, including self-insurance. In the event the eligible insured person has other similar automobile insurance including self-insurance available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and The Travelers shall not be liable for the greater proportion of any loss to which this coverage bears to the sum of the applicable limits of liability of this coverage and such other insurance.

The trial court interpreted this language and similar language contained in the policy of insurance issued by Ambassador to mean "that the insured shall not collect twice for the same medical bills", noting that such was not the case here since the damages incurred by respondent exceeded the limitations of the combined limits of both policies. Appellant asserts the policy defense that, considering the other insurance available and paid to respondent, it has no duty to pay him. If correct, the clause would constitute a complete defense to the action.

In United Services Auto. Ass'n. v. Dokter, 86 Nev. 917, 478 P.2d 583 (1970), we dealt with the interpretation of an "other insurance" clause contained in two policies issued by the same insurance company. There, this Court held that the purpose of the "other insurance" clause was twofold, "to prorate the loss and to fix the limit thereof." *Id.* at 920, 478 P.2d at 584. This Court then referred to the cases concerned with multiple policies written by different insurers, stating that they were significantly distinguished from the *Dokter* facts. We went on to find

the language to be ambiguous and concluded that it was inappropriate to apply the "other insurance" clause to limit recovery when the same insurance company issued both policies because the insured would not reasonably anticipate the construction urged in light of the purpose of the "other insurance" clause. Here, the clause is not ambiguous, and although the facts in *Dokter* and the instant fact "distinctions are significant," *id.* at 919, 478 P.2d at 584, we are not inclined to depart from the result reached therein.

The case now before us is one of first impression in Nevada. Travelers, by its "other insurance" clause, sought to defer or limit its liability if other insurance is available to pay part or all of its insured's loss. In Werley v. United Services Auto. Ass'n., 498 P.2d 112 (Alaska 1972), the court relied heavily on the Oregon decision in Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 341 P.2d 110 (Or. 1959), and held that the "other insurance" clause contained in one policy of insurance was null and void when it conflicts with a similar clause contained in another policy of insurance. We adopt the Oregon or "Lamb-Weston" rule of insurance law concerning conflicting "other insurance" clauses.

Appellant contends that the *Werley* decision should not be applied to the "other insurance" clause contained in the Travelers policy because it was almost identical to the clause contained in the Ambassador policy. If, however, both clauses were held to apply, the situation could arise where both companies disclaimed liability, relying on the provisions of the "other insurance" clause, thus resulting in inevitable unnecessary litigation. Circularity was one of the major concerns of both the *Werley* and *Lamb-Weston* courts.

We additionally find the "Lamb-Weston" rule to be more valid for the reasons that it avoids arbitrariness in the selection of conflicting clauses and giving effect to it, it discourages litigation between insurers, and it does provide a basis for a uniformity of result. Werley v. United Services Auto. Ass'n., 498 P.2d 112 (Alaska 1972).

Accordingly, the better view favors respondent's position that an insured is entitled to payment in full up to the policy limit, with respect to each policy under which coverage is afforded, and that "other insurance" clauses and similar clauses which purport to limit liability are void. Geyer v. Reserve Insurance Company, 447 P.2d 556 (Ariz. 1968); Sparling v. Allstate Insurance Company, 439 P.2d 616 (Or. 1968); Sellers v. United States Fidelity and Guaranty Company, 185 So.2d

689 (Fla. 1966); Bryant v. State Farm Mutual Auto. Ins. Co., 140 S.E.2d 817 (Va. 1965).

"The original reason for 'other insurance' clauses was to prevent overinsurance and double recovery under property and fire insurance policies. But since there is a greatly diminished risk of fraudulent claims under an automobile liability insurance policy, this original purpose of 'other insurance' clauses is of only limited importance." Werley v. United Services Auto. Ass'n., 498 P.2d 112, 116–117 (Alaska 1972). "Other insurance" clauses "function solely to reduce or eliminate the insurer's loss in the event of concurrent coverage of the same risk."[1] If there ever was a strong rationale for the the use of "other insurance" clauses it has, on facts such as those presently before us, substantially evaporated.

We affirm the summary judgment and hold that the actual damages sustained by respondent are recoverable to the full extent of the combined limits of both policies.

BATJER, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.

---

[1]Note, Concurrent Coverage in Automobile Liability Insurance, 65 Colum.L.Rev. 319, 320 (1965).